1  JEFFREY J. ZUBER (SBN 220830)
   *jzuber@ztllp.com*
2  ALBERT T. WU (SBN 228268)
   *awu@ztllp.com*
3  ZUBER & TAILLIEU LLP
   10866 Wilshire Boulevard, Suite 300
4  Los Angeles, California 90024
   Telephone: (310) 807-9700
5  Facsimile: (310) 807-9701

6  Attorneys for Defendant MedAvant Health Care
   Solutions

7

8

9                UNITED STATE DISTRICT COURT

10             SOUTHERN DISTRICT OF CALIFORNIA

11             940 Front Street, San Diego, CA 92101-8900

12

13  THREE RIVERS PROVIDER
    NETWORK, INC.,                    Case No. 07 CV 2333 WQH CAB

14              Plaintiffs,           NOTICE OF REMOVAL OF ACTION
                                      UNDER 28 U.S.C. §1441(b) (FEDERAL
15       v.                           QUESTION)

16  PLAN VISTA SOLUTIONS, INC.
    dba MEDAVANT HEALTH CARE
17  SOLUTIONS fka NATIONAL
    PREFERRED PROVIDER
18  NETWORK, and DOES 1-100,

19              Defendants.

20

21

22

23

24

25

26

27  ///

28  ///

                                      NOTICE OF REMOVAL
                                      28 U.S.C. §1441(b)

FILED

07 DEC 13 PM 2:18

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY:                    DEPUTY

1             TO THE CLERK OF THE ABOVE-ENTITLED COURT:

2             PLEASE TAKE NOTICE that Defendant MedAvant Health Care

3   Solutions (sometimes referred to herein as "MedAvant" or "Defendant") hereby

4   removes to this Court the state court action entitled "THREE RIVERS PROVIDER

5   NETWORK, INC., Plaintiffs, v. PLAN VISTA SOLUTIONS, INC. dba

6   MEDAVANT HEALTH CARE SOLUTIONS fka NATIONAL PREFERRED

7   PROVIDER NETWORK, and DOES 1-100, Defendants," Case No. 37-2007-

8   00081609-CU-FR-CTL, currently pending in the Superior Court of the State of

9   California in and for the County of San Diego, pursuant to 28 U.S.C. §§1441 and

10  1446. The grounds for removal are set forth below.

11        1.     On or about November 13, 2007, Plaintiff THREE RIVERS

12  PROVIDER NETWORK, INC. ("Plaintiff") commenced this action in the Superior

13  Court of the State of California in the County of San Diego (the "State Court") by

14  filing a Complaint captioned "THREE RIVERS PROVIDER NETWORK, INC.,

15  Plaintiffs, v. PLAN VISTA SOLUTIONS, INC. dba MEDAVANT HEALTH

16  CARE SOLUTIONS fka NATIONAL PREFERRED PROVIDER NETWORK,

17  and DOES 1-100, Defendants" as Case No. 37-2007-00081609-CU-FR-CTL (the

18  "State Court Action").

19        2.     The first date upon which MedAvant received a copy of the

20  Complaint, through service or otherwise, was on or about November 15, 2007,

21  when a copy of the Summons and Complaint in the State Court Action were

22  received by MedAvant. A true and correct copy of the Complaint for 1) False

23  Advertising; 2) Unfair Competition; 3) Breach of Contract; 4) Fraud; 5)

24  Conversion; 6) RICO is attached hereto as Exhibit A. A true and correct copy of

25  the Summons is attached as Exhibit B.

26        3.     Attached as Exhibit C is a true and correct copy of a Notice of

27  Case Assignment for the State Court Action.

28

NOTICE OF REMOVAL
28 U.S.C. §1441(b)

1      4.      The documents attached as Exhibit A through C constitute

2 copies of all process, pleadings and orders received or served upon Defendant in the

3 State Court Action.

4      5.      This action is a civil action of which this Court has original

5 exclusive jurisdiction pursuant to 28 U.S.C. § 1331, and is one which may be

6 removed to this Court by Defendants pursuant to the provisions of 28 U.S.C. §

7 1441(b), because it arises under 18 U.S.C. § 1962(a), (b), and (c) ("RICO") in that

8 Plaintiff claims that Defendants violated RICO by engaging in a pattern of

9 racketeering activity with the intent to deceive Plaintiffs to further a fraudulent

10 scheme utilizing the United States mail and/or wires, conduct business through

11 racketeering, to acquire Plaintiff's interest in the right to profit from the TRPN

12 network through racketeering, to attempt to acquire a racketeering enterprise, and to

13 conduct and participate in the conduct of a racketeering enterprise.

14      6.      There are no other defendants in this action other than

15 MedAvant that have been served or have appeared in the State Court Action.

16      7.      This Notice of Removal is filed within thirty days of November

17 15, 2007, the date on which Defendant MedAvant received copies of the Summons

18 and Complaint. This Notice is therefore timely under 28 U.S.C. § 1446(b).

19

20

21

22

23

24

25

26

27 / / /

28 / / /

NOTICE OF REMOVAL
28 U.S.C. §1441(b)

1        8.     Written notice of the filing of this Notice of Removal has been

2 served upon Plaintiff, and a true copy of this Notice of Removal and the

3 accompanying documents have been filed with the Clerk of the State Court, as

4 required by 28 U.S.C. § 1446(d).

5

6 Dated: December 13, 2007            Respectfully submitted:

7

                               ZUBER & TAILLIEU LLP

8                            JEFFREY J. ZUBER
                            ALBERT T. WU

9

10           By:

11                    Attorneys for Defendant MedAvant
                    Health Care Solutions

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF REMOVAL
28 U.S.C. §1441(b)

# EXHIBIT A

1  William J. Hurley III, Esq. (SBN 188301)
   1620 5th Avenue, Suite 900
2  San Diego, California 92101
   Telephone: (619) 564-8414
3  Facsimile:  (619) 795-9501

4

5  Attorney for Plaintiff
   Three Rivers Provider Network
6

7

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                COUNTY OF SAN DIEGO - CENTRAL DISTRICT

10

11  THREE RIVERS PROVIDER NETWORK,          Case No.  37-2007-00081809-CU-FR-CTL
    INC.,
12                                          COMPLAINT FOR DAMAGES FOR:
                 Plaintiffs,
13                                          1)  False Advertising
                                            2)  Unfair Competition
14            v.                            3)  Breach of Contract
                                            4)  Fraud
15  PLAN VISTA SOLUTIONS, INC. dba          5)  Conversion
    MEDAVANT HEALTH CARE SOLUTIONS          6)  RICO
16  fka NATIONAL PREFERRED PROVIDER
    NETWORK, and DOES 1-100,
17
                 Defendants.
18

19       Plaintiff Three River Provider Network, Inc. ("TRPN") on behalf of itself and all others

20  similarly situated alleges, based upon personal knowledge as to TRPN and the acts related to TRPN

21  stated herein, and as to all other matters, upon information and belief based upon, *inter alia*, the

22  investigations made by TRPN and TRPN's attorneys as follows:

23                            **NATURE OF THE ACTION**

24       As more fully set forth herein, Plaintiff TRPN is a Preferred Provider Organization ("PPO")

25  which consists of more than 1,400,000 provider locations nationally, which locations represent direct

26  contracts between TRPN and health care providers.  TRPN contracts provide discounts on group

27  health, workers compensation and automobile liability claims.  TRPN owns the Managed Care

28  Strategies ("MCS") and Buckeye Preferred Network and manages the provision of the discounts.  In

                                        1
                                    COMPLAINT

1  early 2001, Defendant Plan Vista Solutions, Inc. dba MedAvant fka National Preferred Provider

2  Network ("NPPN") (hereinafter collectively "MedAvant") entered into a contract with TRPN

3  whereby MedAvant's clients, various insurers and/or third party administrators, were to gain access

4  to TRPN's network to attain reductions in health care costs through the TRPN network.

5       Following a repeated pattern of breach of that agreement by MedAvant, TRPN brought suit

6  against MedAvant to enforce the provisions of the underlying agreement. The litigation resulted in a

7  new contract between the parties. That contract was signed by Medavant and TRPN in June, 2006.

8       This action involves numerous breaches by MedAvant of the underlying agreement, resulting

9  in violations of California's unfair competition, false advertising and fraud laws. The multiple

10  breaches rise to the level of violations of the federal Racketeer Influenced and Corrupt Organizations

11  Act ("RICO"). MedAvant has also violated both State of California and ERISA laws pertaining to

12  the illegal taking of discounts through "Silent PPO" arrangements. MedAvant and its clients have

13  systematically attempted to deprive TRPN of the access fees for the discounts and have thereby

14  converted TRPN's asset, the discounts negotiated with the providers.

15                              **JURISDICTION AND VENUE**

16       1.    This Court has jurisdiction over the action since the amount of controversy exceeds

17  the applicable jurisdictional requirement, exclusive of interest and costs, as to the named Plaintiff.

18  Plaintiff has been damaged in an amount equal to the illegal discounts taken for services rendered,

19  (the full amount of which has not yet been ascertained, but is in excess of $45 million), plus an

20  amount equal to the value of the service, material, product and network access taken by Defendants

21  without Plaintiff's knowledge.

22       2.    Venue is proper in this Court because the named Plaintiff is headquartered in and

23  operates the TRPN network out of their office located in the County of San Diego, State of

24  California. Venue is also proper as the contract at issue provided that it would be governed by and

25  construed in accordance with the laws of the State of California, and multiple breaches of the

26  contract occurred here.

27  ///

28  ///

1

**PARTIES**

2          3.      Plaintiff TRPN is a corporation qualified to do business in California with its

3    headquarters located at 1620 Fifth Avenue, Suite 900, San Diego, CA 92101.  TRPN owns and

4    operates the Managed Care Strategies ("MCS") network and provides discounts, through direct

5    contracts between TRPN and health care providers, on group health and other liability claims.

6    TRPN additionally has contracts with several of the largest health care carriers in the United States.

7          4.      Defendant MedAvant is a business organization, form unknown, with principal

8    offices located at 1854 Shackleford Court, Suite 200, in Norcross, Georgia.  On information and

9    belief, MedAvant also has corporate offices in other states, including one at 1901 East Alton, Suite

10   100, Santa Ana, California.  MedAvant also has corporate offices located at 419 East Main Street,

11   Middletown, New York.  Defendant contracted directly with Plaintiff to attain reductions in

12   discounts through access to Plaintiff's network.  MedAvant transacts substantial business in

13   California, and especially here in San Diego, California, but also affects interstate commerce

14   throughout the states of the nation.

15         5.      Plaintiff is informed and believes, and thereon alleges, that Defendants including

16   MedAvant and its clients named herein as Does 1 through 100 were responsible in some manner for

17   the matters alleged in this complaint, as well as for the damages caused thereby.  The true names and

18   capacities of these defendants named as Does 1 through 100 are presently unknown to Plaintiff.

19   Plaintiff will amend this complaint when such names and/or capacities are ascertained.

20         6.      Plaintiff is informed and believes, and thereon alleges, that at all times material

21   hereto, each Defendant, including those named fictitiously herein, in addition to acting for himself,

22   herself, or itself, and on his, her or its own behalf, is and was acting as the agent, servant, employee

23   and representative of, and with the knowledge, consent and permission of each and all of the other

24   defendants and within the course, scope and authority of such agency, service, employment and

25   representation.  Plaintiff is further informed and believes, and thereon alleges, that the acts of each

26   defendant referred to in this complaint were fully ratified by all of the other defendants herein.

27   ///

28   ///

3
COMPLAINT

## FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

7.      On or about April 10, 2001, the parties entered into a written Network Agreement whereby TRPN leased access to Plaintiff's network of discounts on group health, workers compensation and automobile claims to MedAvant. After TRPN was forced to file litigation against MedAvant for breaches of that agreement in early 2006, the parties entered into another contract regarding network access, dated June 17, 2006. A true and correct copy of that contract is attached hereto as Exhibit 1. The terms of both agreements were essentially the same and will be detailed below.

8.      Pursuant to these contracts, in exchange for TRPN's agreement to provide MedAvant's clients access to TRPN's network, MedAvant agreed, *inter alia*, to pay TRPN a percentage of the fees received from its clients, as well as to send monthly reports regarding all services subject to the network discounts. Subsequent amendments to the contract have increased the fee percentage, but have left the majority of the underlying terms of the original contract unchanged.

9.      MedAvant also agreed to advise its clients of discounts arranged through the network and agreed to notify the network when a client had agreed to use the discounts. Originally, the contract called for a list of MedAvant's clients to be attached to the contract itself. This list was not attached until June of 2006.

10.      In Paragraph 4 of the contract, MedAvant agreed to use its "best efforts" to have its clients refer to TRPN specifically by name on the Explanation of Benefits ("EOB") form. This is important because TRPN's contracts with providers require that TRPN be identified on the EOB.

11.      Despite its agreement to do so, MedAvant did not use its best efforts to include Plaintiff TRPN's name on the EOB forms. This practice resulted in a large number of provider inquiries directly to TRPN, when the providers did not recognize the names that were used on the EOBs, since MedAvant had failed in its responsibility to place TRPN's name on the form.

12.      Rather than meeting their duties of disclosure under the contract, MedAvant began as early as 2001 to consistently and repeatedly omit TRPN's name on the EOB form, and this practice continues until the present day. For example, on January 24, 2006, TRPN received an inquiry from

4
COMPLAINT

1   a provider who could not properly identify the source of a discount based on Defendants' practice of

2   misidentification on the EOBs. This particular provider wrote to TRPN and expressed their

3   confusion stating:

> "The following claim was sent to 'the Alliance' (I don't have any idea
> who they are). They sent our claim to 'MedAvante/Plan Vista' (don't
> know who they are) for repricing. They sent the claim to 'NPPN' for
> repricing. NPPN took a TRPN discount . . . but only verbally because
> the EOB states NPPN travel.'

8   This is only one of hundreds of such inquiries which TRPN has had to process as a result of

9   Medavant's breach of the contract. It was by investigating these claims thoroughly that TRPN

10  became aware of the full implication of the absence of their name from the EOBs.

11      13.    On February 6, 2006, TRPN was contacted by one of their providers due to

12  Defendants' practice of misidentification on the EOBs. That particular provider wrote to TRPN and

13  stated:

> "I have contacted "NPPN" several times about claims that have been
> repriced by them but the network used not being identified on the
> explanation of benefits. I have explained to them that we must have
> this info on the EOBs, they tell me that they are not required to do this.
> I have explained to them that in order for the discount to be done this
> must show on all EOBs. This is needed to ensure that the discount is
> at our contract rate and that the patient will receive the correct contract
> discount. Not all claims repriced by "NPPN" is (sic) this way, but the
> majority of them are".

20  In this way, MedAvant's custom and practice of breaching the contract and misidentifying the

21  source of the discounts on the EOBs directly interfered with TRPN's ability to do business with their

22  providers. TRPN personnel had to spend their time and efforts responding to the providers'

23  confusion caused by MedAvant's multiple breaches of contract.

24      14.    Through their investigation, TRPN has discovered that there are numerous instances

25  where Defendant MedAvant allowed its client to receive a discount of a provider's bill by utilizing

26  the TRPN/MCS network, without including that same discount in the utilization reports provided to

27  TRPN by MedAvant. This is critical because it is only through those savings reports that TRPN can

28  accurately and comprehensively determine the total amount of discounts and, therefore, the fee to

5
COMPLAINT

1   which TRPN is entitled from Defendants. Plaintiff is informed and believes, and thereon alleges,
2   that Defendants intentionally omitted the data on the EOB forms and in the savings reports so that
3   TRPN would not discover Defendants' scheme to avail themselves and their clients of discounts
4   through the TRPN/MCS network without paying the contract fee for those discounts.

5       15.     During its investigation, TRPN also became aware that on prior occasions MedAvant
6   was demanding a discount despite the lack of proper network identification on the EOB. Plaintiff is
7   informed and believes, and thereon alleges, that these actions were part of Defendants' scheme to
8   obtain discounts to which they are not entitled. Plaintiff is also informed and believes and thereon
9   alleges that MedAvant failed to disclose to TRPN as well as MedAvant's own clients and brokers,
10  the rate at which it was providing access to TRPN's discounts so as to unjustifiably convert the
11  proceeds of that access to its own gain.

12      16.     During TRPN's investigation, it became clear to TRPN that many of MedAvant's
13  clients were accessing the TRPN/MCS network while MedAvant continued to fail to identify those
14  clients on the EOBs and the monthly savings reports, and thereby deprived TRPN of their rightful
15  fee for the access. On further investigation, TRPN discovered that MedAvant had been signing up
16  some clients on a "capitated system" rather than based on a percentage of savings, and MedAvant
17  was allowing those clients access to the TRPN/MCS network without disclosing their existence to
18  TRPN and without sharing any of the proceeds gained by way of the capitation system with TRPN
19  as required by the contract. Since the payments MedAvant received from these capitation
20  agreements were never reported to TRPN, TRPN could not know the payments existed. As of July
21  of 2007, MedAvant ceased to provide this essential savings report to TRPN at all and ceased
22  payment of any access fee in clear breach of the contract terms.

23      17.     Plaintiff is informed, believes and thereon alleges, that Defendant's failure to place
24  TRPN's name on the EOBs was part of a scheme to defraud Plaintiff out of the fees to which
25  Plaintiff was entitled under the contract and to deceive health care providers as to the Payors
26  responsible for the payment of invoices and to receive discounts from providers to which MedAvant
27  was not entitled and to create a course of conduct by which providers accept discounts directly from
28  NPPN not TRPN. Furthermore, Plaintiff is informed and believes and thereon alleges that

6.
COMPLAINT

1  Defendants and its clients intentionally conspired to form a plan to receive discounts from healthcare

2  providers while taking hidden fees from corporate and public healthcare plans without disclosing

3  these fees or passing on the benefit of the same.  Plaintiff is informed, believes and thereon alleges

4  that Defendants knew that the statements in the savings reports and on the EOBs naming someone

5  other than TRPN were false when made, and that Defendants did so with the intent to mislead

6  Plaintiff and others.

7  <u>California's Prohibition of "Silent PPO" Activities</u>

8        18.    California has a wide body of statutory and decisional law indicating the public

9  policy in favor of preventing "Silent PPO" situations, such as the one presented here.  For example,

10  California statutory law provides that "contracting agents" that sell, lease or transfer such contracted

11  discounts can no longer transfer just the discount, rather, "the rights and obligations of the provider

12  shall be governed by the underlying contract between the health care provider and contracting

13  agent".  California Business & Professions Code, §511.3; California Health & Safety Code §1375.7;

14  California Insurance Code §10178.4; California Labor Code §4610.  Additionally, California law

15  provides that payors claiming a discount must provide an explanation of benefits (EOB) that

16  identifies the name of the plan or network that has a written agreement signed by the physician

17  whereby the payor is entitled to pay a preferred rate.  The California Medical Association's legal

18  counsel has opined that California law has provided a mechanism that ensures that the pernicious

19  effects of "Silent PPOs" are minimized.  The CMA legal counsel has stated in legal opinions that

20  they believe that "Silent PPO" practices amount to theft and that restitutionary disgorgement of

21  profits should be a remedy available to the victims of "Silent PPO" activities under California's

22  unfair competition law.

23        19.    The strong public policy against "Silent PPO" activities in California law is necessary

24  to prevent the kind of illegal activities which have taken place here as a result of MedAvant's

25  actions.  MedAvant is essentially keeping TRPN providers and MedAvant's clients from discovering

26  each others' identities and from knowing through which underlying contract the provider's services

27  are being compensated.  This is the very situation that California's "Silent PPO" laws are designed

28  to avoid.

7
COMPLAINT

**SECOND CAUSE OF ACTION**
(Unfair Competition – Business and Professions Code §17200 et seq.)
(Against all Defendants)

24.   Plaintiff incorporates by reference all preceding paragraphs as if fully set forth here and further alleges as follows:

25.   Defendants are in violation of California statutory law regarding "Silent PPO" activities, including, but not limited to, Business and Professions Code §511.3; California Health and Safety Code §1375.7; California Insurance Code §10178.4; and Labor Code §4610. Defendants' actions violate the public policy encompassed in the California "Silent PPO" law, in that Defendants violated the terms of the underlying contract by, among other things, failing to disclose TRPN as the source of the discounts on the EOB forms.

26.   The Unfair Competition Act ("UCA"), California Business & Professions Code §17200 et seq. prohibits any "unlawful, unfair or fraudulent business practices." §17203 provides that any "person who engages, has engaged or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction." Defendants' actions as outlined herein are unlawful business practices and therefore violate Business & Professions Code 17200 et seq.

27.   TRPN has been damaged as a result of Defendants' actions.

**THIRD CAUSE OF ACTION**
(Breach of Contract)
(Against all Defendants)

28.   Plaintiff incorporates by reference all preceding paragraphs as if fully set forth here and further alleges as follows:

29.   The written contract between TRPN and MedAvant provides responsibilities and duties for each party, and is attached as Exhibit 1.

30.   MedAvant breached that agreement by among other things:

- Failing to advise its clients of discounts arranged through TRPN and failure to notify TRPN when a client had agreed to use those rates;
- Failing to attach a list of clients to the original contract;

9
COMPLAINT

1    • Failing to periodically notify TRPN of additions and/or deletions to the client

2        list;

3    • Failing to use any efforts whatsoever to refer to TRPN directly on the EOBs;

4    • Failing to pay TRPN the correctly accounted for percentage of the fees

5        Defendants received from its clients as a result of the access to TRPN's

6        network; and

7    • Failing to provide TRPN with monthly savings reports beginning in July of

8        2007.

9        31.    Plaintiff has faithfully performed all obligations, conditions, covenants and promises

10   on its part to be performed under the agreement, except for those conditions, covenants and promises

11   that have been prevented or excused by Defendants' conduct.

12       32.    As a proximate result of the Defendants' breaches of contract, Plaintiff has suffered,

13   and will continue to suffer damages in an amount to be proven at trial and in excess of this Court's

14   jurisdictional minimum.

15                               **FOURTH CAUSE OF ACTION**
                                          **(Fraud)**
16                              **(Against all Defendants)**

17       33.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth here

18   and further alleges as follows:

19       34.    When Defendants made and/or caused to be made the misrepresentations set forth

20   herein on the EOBs and savings reports, and/or caused said misrepresentations to be made, they

21   knew of the falsity of the representations and made the representations with the intent to induce

22   TRPN and others to rely on the false statements.

23       35.    Throughout the time alleged herein, TRPN was ignorant of the falsity of the

24   representations made by Defendants and relied on these representations with respect to continuing to

25   work with Defendants and in calculating the fees owed them under the network agreement. Had

26   TRPN known the true facts, Plaintiff would have investigated the accountings more completely and

27   earlier and avoided the losses and damages incurred as alleged herein.

28

36.  As a result of the intentional misrepresentations described herein, TRPN has been damaged by providing NPPN clients with more than over $45 million worth of discounts, the exact amount to be proven at trial.

**FIFTH CAUSE OF ACTION**
**(Conversion)**
**(Against All Defendants)**

37.  Plaintiff incorporates by reference all preceding paragraphs as if fully set forth here and further alleges as follows:

38.  TRPN possessed an ownership interest in the discounts negotiated directly with its providers. TRPN's discount network, its assets and all economic benefits and advantages inured to TRPN's benefit. TRPN further had a legal, equitable, and contractual entitlement to the negotiated discounts with the providers.

39.  Defendants, and each of them, wrongfully converted TRPN's assets, property, property rights and the proceeds thereon, and have misappropriated and usurped for their own economic benefit said assets, property, proceeds and property rights belonging to TRPN.

40.  At all times herein mentioned, Defendants and each of them acted in furtherance of a scheme to intentionally misappropriate TRPN's property in the form of negotiated discounts. Plaintiff is informed and believes, and thereon alleges that Defendants have converted those discounts to their own benefit and intend to permanently deprive TRPN of those assets.

41.  As a result of Defendants' acts, TRPN has been deprived of the negotiated discounts in an amount believed to be in excess of $45 million. The exact amount to be proven at the time of trial.

**SIXTH CAUSE OF ACTION**
**(Racketeering Influence and Corrupt Organizations)**
**(Against all Defendants)**

42.  Plaintiff incorporates by reference all preceding paragraphs as if fully set forth here and further alleges as follows:

11

COMPLAINT

43.    This venue is proper for prosecution of this action, pursuant to 18 U.S.C. §1965(d), as Defendants at all relevant times transacted business in the County of San Diego and Defendants at this time are presently transacting business within the County of San Diego.

44.    As more particularly alleged below, Defendants herein, through a pattern of racketeering activity, directly or indirectly, engaged in, maintained and controlled an enterprise which substantially affects interstate commerce and which damaged TRPN and TRPN's business and/or property. MedAvant's enterprise substantially affects interstate commerce inasmuch as it operates services, including health care transaction processing, throughout the United States and boasts on its website on the internet that it "operates the oldest and most established network of pharmacies for E-Prescribe Solutions and runs one of the largest independent Preferred Provider Organization – the National Preferred Provided Network (NPPN)." MedAvant also routinely utilizes the United States mails and wires as well as the internet, on an interstate basis and generally has a very substantial impact upon interstate commerce.

45.    Defendants, and each of them, formulated, initiated, implemented, offered to, and are presently engaged in perpetuating a scheme to deprive plaintiffs of money and property by means of false and fraudulent pretenses, representations and promises. More particularly, Defendants, beginning in 2001 and continuing consistently until the present, agreed and undertook to wrongfully deprive TRPN of the benefits of the TRPN network, and to appropriate, cease and convert the tools and assets of the TRPN networks unto themselves, in order to misappropriate and retain the economic benefit and profits from leasing access to that network to others, until the same were converted into cash or cash equivalents.

46.    Defendants have engaged in a pattern of racketeering activity by engaging in the following indictable offenses, all with the specific intent to deceive or defraud Plaintiffs by furthering the goals of Defendants' fraudulent scheme through false or fraudulent pretenses:

    a)    On or about July 23, 2006, by utilizing the United States mail and/or United States wires in forwarding correspondence from Defendant MedAvant to TRPN in furtherance of Defendants' scheme, with the specific intent to deceive and defraud TRPN with respect to the omission of discounts taken from that document;

b)    On or about July 30, 2007, by utilizing the United States mail and/or United States wires in forwarding correspondence from Defendant MedAvant to TRPN in furtherance of Defendants' scheme, with the specific intent to deceive and defraud TRPN regarding the omission of discounts taken from the document;

c)    Plaintiff is informed and believes and thereon alleges that Defendants, up to the present, have engaged in other indictable offenses constituting predicate acts under 18 U.S.C. §§1961 et seq. and unequivocally demonstrating that Defendants, as a general practice, conduct their business through racketeering activity, thereby demonstrating a pattern.

47.    In acting as alleged herein above, Defendants have violated 18 U.S.C. §1962(a) inasmuch as they have used and invested proceeds derived from their NPPN activities to acquire, or attempt to acquire, and to operate Defendants' racketeering enterprise.

48.    Defendants have violated 18 U.S.C. §1962(b) by wrongfully acquiring, or purporting to acquire Plaintiff's interest in the right to the profit derived from the TRPN network through the pattern of racketeering activity detailed above.

49.    By engaging in the pattern of racketeering alleged hereinabove, Defendants have violated 18 U.S.C. §1962(c) by conducting and participating, directly and indirectly, in the conduct and maintenance of the racketeering enterprise.

50.    The Defendants and each of them agreed and conspired with each other defendant and others, to perpetrate the aforementioned violations of 18 U.S.C. §§1962(a)(b) and (c) and, in engaging in a pattern of racketeering activity referred to hereinabove, acted in furtherance of the agreed upon plan to commit the alleged predicate acts to advance and further their scheme.

51.    Plaintiff TRPN has been damaged in its business and property by being fraudulently deprived of the proceeds of the TRPN network and their contractual right to receipt of substantial money in the form of percentage of discounts offered by Defendants. Defendants racketeering activity enabled them to deceive Plaintiff and thereby gain control of the assets of the discounts provided over the TRPN network, all documenting a substantial nexus between Defendants' racketeering activity, their RICO enterprise and Plaintiff's economic damages.

13
COMPLAINT

52.     Defendants' racketeering activities in violation of 18 U.S.C. §1962 were a legal cause of Plaintiff's economic injury in a sum in excess of this Court's jurisdictional minimum and which is believed by Plaintiff to be in excess of $45 million.

53.     Pursuant to 18 U.S.C. §1964, Plaintiff is entitled to three times their actual economic damages. Plaintiff is informed and believes, and thereon alleges, that Defendants' racketeering activity is ongoing and, hence, is not closed. Specifically, Defendants' RICO enterprise is even at the present time engaged in attempting to market, lease, alienate, convey, and otherwise utilize for Defendants' sole economic benefit, the assets of TRPN and of the enterprise for Defendants' own gain and continue to collect profits and other financial benefit from the Defendants' activities to TRPN's detriment.

54.     Plaintiff is informed and believes, and thereon alleges, that Defendants' ongoing conduct clearly presents a continued threat of repeated racketeering activity at present and in the future as documented by Defendants' pattern of conduct.

WHEREFORE, Plaintiff prays for relief against Defendants as follows:

1.      For compensatory damages according to proof and in excess of $45 million;

2.      For treble damages under 18 U.S.C. §1964;

3.      For prejudgment interest according to proof;

4.      For costs of suit, including expert fees and costs incurred herein;

5.      For reasonable attorneys' fees; and

6.      For such other and further relief as the Court may deem just and proper.


Dated:      November 13, 2007


                                        By: _____
                                            William J. Harley III
                                            Attorney for Plaintiff Three Rivers Provider
                                            Network

# EXHIBIT 1

Network Access Agreement
Between
Three Rivers Provider Network
and
MedAvant

This Agreement ("Agreement") is made and entered into on June 27ᵗʰ ____, 2006, by and between Three Rivers Provider Network ("TRPN"), a Nevada Corporation and PlanVista Solutions, Inc. d/b/a MedAvant Healthcare Solutions f/k/a National Provider Network, hereinafter referred to as "MedAvant" with offices at 1854 Shackleford Court, Suite 200, Norcross, GA 30093.

WHEREAS, TRPN, on behalf of its respective clients and payors, has created and maintains a network of health care providers ("Participating Provider Network") by entering into contracts with hospitals, ancillary health care facilities, and individual health care practitioners (collectively referred to as "Participating Providers"). Participating Providers deliver services ("Provider Services") at a reduced rate for TRPN's clients and payors.

WHEREAS, TRPN owns the MCS and Buckeye Preferred Networks and continues to actively contract with hospitals, ancillary health care facilities and individual health care practitioners for inclusion in the Participating Provider Network(s) ("TRPN Affiliated Networks.")

WHEREAS, MedAvant, contracts with Clients and Payors with respect to rendering of Provider Services for the benefit of such Payors that have a contract with MedAvant or a MedAvant Client. "Client" means any entity having an active written agreement with MedAvant for MedAvant to make Provider Services available to its Beneficiaries as defined below, or to its Payors and their Beneficiaries. "Payor" means any self-insured employer, provider organization, health maintenance organization, insurance company, or any other entity responsible under health care plan benefits, auto liability claims, or worker's compensation benefits ("Benefit Plans") to pay for health care services for participants, dependents, or retirees ("Beneficiaries") and has an active Payor Agreement with MedAvant. "Payor Agreement" means a direct agreement between MedAvant and Payor that provides Beneficiaries access to the Participating Provider Network on behalf of MedAvant's Clients and Payors.

WHEREAS, MedAvant wishes to arrange for access of the TRPN Participating Provider Network and TRPN Affiliated Networks for MedAvant Clients, Payors and Beneficiaries.

WHEREAS, TRPN wishes to grant MedAvant access to the TRPN Participating Provider Network and TRPN Affiliated Networks.

NOW THEREFORE in consideration of the mutual promises contained in this Agreement, the Parties agree as follows:

1.

1.  This Agreement shall be effective from June 27 2006, through the 31st
    day of June, 2007, and shall be automatically renewed for successive
    one (1) year periods.

    TRPN agrees that its contracts with Participating Providers and TRPN
    Affiliated Networks entitle MedAvant and MedAvant Clients to access
    discounts from such Participating Providers and requires them to abide by
    the terms of this Agreement and accept assignment of benefits from
    Beneficiaries of Payor, and to submit claims for covered medical services
    directly to Payors or the Payor's authorized administrator. TRPN agrees
    that TRPN contracts with Participating Providers and TRPN Affiliated
    Networks instruct the Participating Providers to collect the required co-
    payments, coinsurance, deductibles and/or payments for non-covered
    services directly from the Beneficiary and to not bill the Beneficiary for
    charges reduced through the Participating Provider's Agreement with the
    Parties.

2.  MedAvant shall utilize the TRPN Participating Provider Network as a
    constituent network within the context of all networks and providers
    offered to MedAvant Clients and Payors and prospective clients and
    payors as a supplemental network for claims which have not been
    repriced within the primary network. MedAvant shall utilize the TRPN
    Participating Provider Network in such a way as to avoid cherry picking
    particular discounts afforded by the TRPN Participating Provider Network,
    and will exercise best efforts to avoid using the TRPN Participating
    Provider Network in such a way as will violate silent PPO laws.
    MedAvant will access TRPN and TRPN Affiliated Networks for secondary
    network access solely through this access agreement and shall not seek
    to negotiate discounts with TRPN Providers on a claim by claim basis for
    any MedAvant Client covered under this Agreement. With respect to any
    particular disputed claim, in the event that TRPN does not provide claim
    support in accordance with industry standards, it shall not be a breach of
    this Agreement for MedAvant to take action, including negotiation with
    TRPN Providers in order to resolve such Claim only after TRPN has been
    provided all claim information so that TRPN can contact and attempt
    resolution with the provider. From time to time, MedAvant will ask TRPN
    to complete a claims savings/provider disruption analysis; TRPN agrees
    to use best efforts to complete such analyses within five (5) business
    days of the request from MedAvant.

3.  (a) TRPN shall make reasonable efforts to ensure that Participating
    Providers render Provider Services to all Beneficiaries in accordance
    with community standards, consistent with Participating Provider's
    training and expertise, and with the manner in which services are
    provided by Participating Provider to other patients, without
    discrimination based on sex, race, color, religion, marital status, sexual
    orientation, age, ancestry or national origin.

2.

(b) By the twentieth (20th) calendar day of each month following collection by MedAvant, MedAvant shall submit a detailed listing "Savings Report" of all claims subject to contractual adjustments from the use of this lease agreement with the TRPN and TRPN Affiliated Network Participating Provider contracts within the prior month. The Savings Report shall include, at a minimum, a listing of each claim re-priced, the gross billed charges and the re-priced amount.

(c) MedAvant shall submit payment hereinafter referred to as "Access Fees" to TRPN on or about the 20th day of the month following receipt of payment from its Clients or Payors of said claims. During those months in which the net "Access Fee" equals or exceeds Twenty-Seven Thousand Five Hundred Dollars ($27,500) TRPN's Access Fees shall be Thirty percent (30%) of the revenue collected from MedAvant Clients utilizing TRPN and TRPN Affiliated Networks. During those months in which the net "Access Fee" falls below $27,500 TRPN's Access Fees shall be thirty-five percent (35%) of the revenue collected from MedAvant Clients utilizing TRPN and TRPN Affiliated Networks. MedAvant agrees not to provide MedAvant Clients with access to TRPN and TRPN Affiliated Networks at a rate less than 10% without the prior written consent of TRPN. TRPN represents and warrants that the Access Fees charged to MedAvant hereunder shall be at least as favorable or more favorable to MedAvant than Access Fee rates charged by TRPN to other similarly situated entities. MedAvant agrees that TRPN's access fees shall not fall below Fifteen Thousand Dollars ($15,000). Both parties agree to keep the terms of this agreement confidential.

(d) In the event that MedAvant files bankruptcy, gives notice of its insolvency, or is in arrears in the payment of access fees to TRPN for more than 45 days (following notice and demand of payment by TRPN), this Agreement shall become immediately null and void.

4. TRPN acknowledges that MedAvant's Clients/ Payors and/or Beneficiaries shall be responsible for the final payment of claims, subject to the obligations of the Beneficiary as designated in the Payor's Benefit Plan. MedAvant shall make best efforts to ensure that the Payor shall make all payments directly to the applicable Participating Provider. Neither TRPN nor MedAvant shall be responsible for any payment of claims or any lost savings. MedAvant shall make best efforts to ensure a notice indicating TRPN/Affiliate Network adjustment or similar words to that effect appear on the Explanation of Benefits. Furthermore, MedAvant acknowledges that TRPN Providers require the "TRPN" name to appear on the Explanation of Benefits in order for a discount to be accepted. Prior to denying any particular discount based upon an EOB that lists MedAvant (or "NPNN"), but not TRPN, however, TRPN shall notify MedAvant and make a good faith attempt to resolve the issues relating to that discount in a mutually agreeable fashion. MedAvant shall make reasonable efforts to ensure that the Payor shall pay the Participating Provider claims within thirty (30) business days of

3

receipt of clean claims from the Participating Provider. The parties agree that the inclusion by MedAvant of language in its contracts with Payors and Clients that such Payors and Clients must pay the Participating Providers within such period satisfies this covenant.

5.  MedAvant recognizes that the TRPN database of Participating Providers, including all Participating Providers' contract terms and affiliations,are proprietary information and, to the extent obtained by MedAvant pursuant to the activities specified in this Agreement, shall be treated as such by MedAvant.  TRPN recognizes that MedAvant's list of Clients and Payors including such entities identity, contract terms and contact information are proprietary information and to the extent obtained by TRPN pursuant to the activities specified in this Agreement, shall be treated as such by TRPN.  Notwithstanding the above two sentences, it shall not be a breach of Section 5 of this Agreement for either party to disclose to any other person, or to use for any purpose any information that is generally known to the public other than as a result of a breach of this Agreement.  MedAvant shall not access TRPN outside this agreement.  MedAvant is permitted to and shall use Participating Provider names, addresses, telephone numbers and specialty/services in its directories in printed or electronic form.  By the tenth (10th) business day of each month, TRPN will send MedAvant a new roster of Participating Providers, in a format mutually agreed to by the parties, including any additions, deletions or changes to Participating Providers.  TRPN agrees not to contact known clients of MedAvant.  Known clients is defined as the entities listed on Exhibit B.  It shall not be a violation of this provision for TRPN to contact a Client of MedAvant if TRPN is responding to a request or complaint of a TRPN provider or on behalf of another vendor, provided such contact is limited to such other vendor's business or gathering information on such TRPN provider inquiries.  TRPN agrees to route such client contact through MedAvant wherever possible.  It is understood that neither party has any intent to break any law relating to "Silent PPO" issues.  In the event either party hereto believes that the conduct of the other is creating a silent PPO issue, that party shall, by way of written notice, bring the issue to the attention of the other party so that the parties may reach an amicable solution.  Such written notice shall include specific instances of the specific behavior that is believed to be violating a specifically indicated "Silent PPO" law.  The parties shall then work together to eliminate such issue, either by determining that there is in fact no violation of the "Silent PPO" laws; or by correcting the behavior that might be violating the "Silent PPO" law(s).  Neither party shall bring any "Silent PPO" issues to the attention of any third-party unless thirty (30) days following the date of such initial notice, the party giving notice does not in good faith believe that the specific instances have been resolved.

6.  (a) TRPN shall have the right to terminate Client/Payor access to any given TRPN or TRPN Affiliated Network Participating Provider.  Both parties agree that the termination of a Participating Provider, by either parties or by the Participating Provider, shall not be considered a

4

breach of the Agreement and shall not affect this Agreement in any way. Participating Provider rates shall be effective as defined in the contracts between the Participating Provider and the networks, and any change in such rates shall not be considered a breach of this Agreement and shall not affect this Agreement in any way. Notwithstanding anything else in this Section 6(a), TRPN may terminate Client/Payor access to any given TRPN or TRPN Affiliated Network Participating Provider only one (1) Client/Payor and one provider at a time, and only as a result of a problem relating to that Client's/Payor's access to that provider; TRPN may not terminate blocks of Clients/Payors or terminate Clients/Payors unrelated to issues with specific providers.

(b) Participating Provider rates shall be effective as defined in the contracts between the Participating Provider and the networks, and any change in such rates shall not be considered a breach of this Agreement and shall not affect this Agreement in any way.

7. None of the provisions of this Agreement are intended to create, nor shall be deemed or construed to create, any relationship between the Parties other than that of independent entities contracting with each other solely for the purpose of effecting the provisions of this Agreement. The Parties to this Agreement, and their respective officers, directors or employees shall not be construed to be joint ventures, or the agent, employee or representative of the other. The Parties acknowledge and accept that neither Party is an insurer, indemnifier or provider of health care benefits. They further acknowledge and accept that neither Party has responsibility or liability for the payment of claims to Participating Providers or for the goods and/or services delivered by Participating Providers to the Beneficiaries of the Payors. Each party shall be responsible for its own acts and omissions and shall hold the other harmless therefore.

8. (a) MedAvant acknowledges that TRPN offers its services on a national basis, including to businesses, which may be competitive with MedAvant. MedAvant agrees that subject to Paragraph 5 of this Agreement, TRPN may provide their services to any other entity.

(b) During the term of this Agreement and for a period of one year after termination of this agreement TRPN shall not directly contract any MedAvant Client that is listed on Exhibit B and has an active contract directly with MedAvant.

9. The Parties acknowledge that in fulfilling the responsibilities set forth in this Agreement, they will have exchanged confidential and proprietary information concerning their business and financial affairs, as well as that of their subsidiaries and other affiliated companies, including and not limited to the rate of payment of the network access fees. The Parties agree not to disclose any such information at any time, except as is necessary, to their employees or agents or as required by law. The Parties further agree that they will take those actions reasonably

5

necessary to ensure that none of their employees or agents discloses such information to any third party or parties. The Parties agree that this obligation shall survive the termination of this Agreement. It shall not be a breach Section 9 of this Agreement for either party to disclose to any other person, or to use for any purpose any information that is generally known to the public other than as a result of a breach of this Agreement.

10. Upon termination of this Agreement, the Parties agree to promptly return or destroy any and all written or magnetic material containing or reflecting any confidential or proprietary business or financial information belonging to the other Party and not retain any copies, extracts or other reproductions in whole or in part of such material.

11. Either Party may terminate this Agreement with sixty (60) days prior written notice as a result of any breach of any provision of this Agreement. The Party receiving such notice shall have thirty (30) days from the receipt thereof to remedy the breach in order to comply with the terms and conditions of this Agreement. After this Agreement has been in place for one year, either Party may terminate this agreement without cause with ninety (90) days prior written notice.

12. The termination of this Agreement for any reason shall cause an automatic termination of the Parties' rights and obligations hereunder.

13. Each of the parties shall have quarterly audit rights with respect to financial records, source documents and other records that may form the basis of payments under this Agreement. A party, or its authorized representative may conduct an audit on no less than thirty (30) days written notice. Audits shall be conducted during normal business hours at the place at which the records being audited are kept, and shall be of such nature and duration as is reasonable given the circumstances so as to cause as little disruption as possible to the party being audited. Audits shall be limited to records no more than 1 year old, and records older than that shall be deemed accepted. The party conducting the audit shall bear all expense of the audit.

14. Each of the Parties agree to indemnify the other Party for any and all liability, loss, damage, claim or expense of any kind, including costs and attorney's fees which result from negligent or wilful acts or omissions by the other Party, its agents or employees, regarding its duties and obligations under this Agreement.

15. All terms and conditions agreed upon by the Parties are contained in this Agreement. All prior negotiations, promises, agreements and representations, either spoken or written concerning the subject matter of this Agreement that are not set forth herein are null and void and have no bearing on the terms of this Agreement. Notwithstanding the above, the parties do not by entering into this Agreement waive or release any claim they may have based upon any prior Agreement or otherwise, all of which are expressly preserved.

6

16. Any modifications, amendments, deletions or addendums to this Agreement shall be mutually agreed to in writing by the Parties.

17. Waiver of any particular provision of this Agreement by either party shall not be considered a waiver of any subsequent occasion or of any other provision of this Agreement. Additionally, failure to exercise any right in regard to this Agreement will not serve as a waiver of such right.

18. Neither party may assign this Agreement without the prior written approval of the other Party. In the event of a change of ownership this contract and all terms herein shall immediately become null and void.

19. Provisions of this Agreement are totally independent of and separable from each other. If any provision of this Agreement is held to be invalid, illegal or unenforceable under present or future laws, such provision shall be fully severable. This Agreement shall be construed and enforced as if such invalid, illegal, or unenforceable provision had never comprised a part hereof, and the remaining provisions shall remain in full force and effect despite such severance, provided that the invalid provision is not material to the purpose and operation of this Agreement.

20. Notwithstanding that benefits may inure to Beneficiaries under this Agreement, it is not the intention of either Party that such Beneficiary shall be a third party beneficiary of the obligations assumed by either Party to this Agreement and no such Beneficiary shall have a right to enforce any such obligation.

21. TRPN has obtained and holds all registrations, permits, licenses, and other approval and consents, and has made all filings that are required to obtain from or make with all governmental entities under applicable law in order to conduct its business and to enter into and perform its obligations under this Agreement. Both parties shall promptly notify the other party of any changes in its ownership or business address and of any event that may materially impair either party's ability to carry out its duties and obligations under this Agreement. TRPN has the right to delegate the credentialing policies and standards as listed in Exhibit A.

22. This Agreement shall be governed by, construed and enforced in accordance with the laws of the State of California.

23. To the extent protected by law, the Parties shall, at all times, maintain the confidentiality of all medical records and other information provided to the Parties regarding Beneficiaries.

24. All notices provided pursuant to this Agreement shall be in writing and shall be sent by United States Postal Service, Certified Mail, Return Receipt Requested, postage prepaid to the address and designee set forth below. Any notice shall be effective on the earlier of the date

7

receipt is acknowledged on the Return Receipt, or four (4) days after the date of the postmark by the United States Postal Service.

| | |
|---|---|
| TRPN | MedAvant, Inc. |
| 1620 Fifth Avenue | 1854 Shackleford Court |
| Suite 900 | Suite 200 |
| San Diego, CA 92101 | , Norcross, GA 30093 |
| Attn:  General Counsel | Attn: Ford Pearson |
| | |
| | With a copy to: |
| | Zuber & Taillieu LLP |
| | 9595 Wilshire Blvd. |
| | 9th Floor |
| | Beverly Hills, CA 90212 |
| | Attn: Josh Lawler |

25.  TRPN and MedAvant shall work together to resolve any and all disputes between them, (hereinafter referred to as "Disputes") including but not limited to all questions of arbitration, the existence, validity, scope or termination of the Agreement or any term thereof.  Any and all disputes arising between the parties pertaining to or arising out of this Agreement shall be resolved in the following order of preference:

(a)  by good faith negotiation between representatives of the parties who have the authority to fully and finally resolve the Dispute;

(b)  if the parties agree, by binding arbitration at a location acceptable to both parties using a neutral arbitrator having experience with the cost shared equally; and

(c)  as a last resort only, by litigation.

The parties must enter a cooling off period of sixty (60) days after the notification of the Dispute in order for a party to commence litigation unless there has been or will be irreparable monetary or reputational harm.

26.  This Agreement becomes a binding contract only after it has been signed by both TRPN and MedAvant.  This Agreement may be executed in any number of counterparts, and each such counterpart shall be deemed to be an original instrument, but all such counterparts together shall constitute but one agreement.  Delivery of an executed counterpart by facsimile shall be equally as effective as delivery of a manually executed counterpart.

27.  The parties acknowledge and agree that this Agreement has been mutually discussed and negotiated, and that this Agreement has been jointly drafted by the Parties hereto.

8

IN WITNESS WHEREOF, MedAvant and TRPN, acting by its authorized
representatives, have signed below.

Three Rivers Provider Network

By: _Blaine D. Pollock_

Blaine D. Pollock
President

Date: _6/27/06_

MedAvant

By: _Doug O'Dowd_

Doug O'Dowd
CFO

Date: _6/27/06_

9

# EXHIBIT B

NOV 16, 2007 06:29A ProxyMed Inc          949852312                         page 1

|  |  | SUM-100 |
|---|---|---|

# SUMMONS
## (CITACION JUDICIAL)

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
Plan Vista Solutions, Inc. dba MedAvant Health Care Solutions fkn
National Preferred Provider Network and DOES 1-100

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
Three Rivers Provider Network, Inc.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>Superior Court of State of California, County of San Diego<br>330 West Broadway<br>San Diego, CA 92101 | CASE NUMBER 37-2007-00081600-CU-FR-CTL<br>*(Número del Caso):* |
|---|---|

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
William J. Hurley III
1620 5th Avenue, Suite 900, San Diego, CA 92101          (619) 564-8414

DATE: NOV 13 2007                    Clerk, by  **S.L. FRANKLIN**         , Deputy
*(Fecha)*                            *(Secretario)*                        *(Adjunto)*

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of (specify):
   Plan Vista Solutions, Inc. dba MedAvant
3. ☑ on behalf of (specify): Health Care Solutions fks IDational Preferring
   Prancity Redworic
   under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
          ☐ other (specify):
4. ☑ by personal delivery on (date):  11-15-07

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

SUMMONS

Code of Civil Procedure §§ 412.20, 465

# EXHIBIT C

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO | |
| STREET ADDRESS:    330 West Broadway | |
| MAILING ADDRESS:   330 West Broadway | |
| CITY AND ZIP CODE:   San Diego, CA 92101 | |
| BRANCH NAME:    Central | |
| TELEPHONE NUMBER: (619) 685-6151 | |

| PLAINTIFF(S) / PETITIONER(S):    Three Rivers Solutions Inc | |
|---|---|
| DEFENDANT(S) / RESPONDENT(S): PLAN VISTA SOLUTIONS INC | |

| THREE RIVERS SOLUTIONS INC VS. PLAN VISTA SOLUTIONS INC | |
|---|---|
| **NOTICE OF CASE ASSIGNMENT** | **CASE NUMBER:**<br>37-2007-00081609-CU-FR-CTL |

Judge: Michael M. Anello                                          Department: C-72

COMPLAINT/PETITION FILED: 11/13/2007

### CASES ASSIGNED TO THE PROBATE DIVISION ARE NOT REQUIRED TO COMPLY WITH THE CIVIL REQUIREMENTS LISTED BELOW

IT IS THE DUTY OF EACH PLAINTIFF (AND CROSS-COMPLAINANT) TO SERVE A COPY OF THIS NOTICE WITH THE COMPLAINT (AND CROSS-COMPLAINT).

ALL COUNSEL WILL BE EXPECTED TO BE FAMILIAR WITH SUPERIOR COURT RULES WHICH HAVE BEEN PUBLISHED AS DIVISION II, AND WILL BE STRICTLY ENFORCED.

TIME STANDARDS: The following timeframes apply to general civil cases and must be adhered to unless you have requested and been granted an extension of time. General civil consists of all cases except: Small claims appeals, petitions, and unlawful detainers.

COMPLAINTS: Complaints must be served on all named defendants, and a CERTIFICATE OF SERVICE (SDSC CIV-345) filed within 60 days of filing. This is a mandatory document and may not be substituted by the filing of any other document.

DEFENDANT'S APPEARANCE: Defendant must generally appear within 30 days of service of the complaint. (Plaintiff may stipulate to no more than a 15 day extension which must be in writing and filed with the Court.)

DEFAULT: If the defendant has not generally appeared and no extension has been granted, the plaintiff must request default within 45 days of the filing of the Certificate of Service.

THE COURT ENCOURAGES YOU TO CONSIDER UTILIZING VARIOUS ALTERNATIVES TO LITIGATION, INCLUDING MEDIATION AND ARBITRATION, PRIOR TO THE CASE MANAGEMENT CONFERENCE. MEDIATION SERVICES ARE AVAILABLE UNDER THE DISPUTE RESOLUTION PROGRAMS ACT AND OTHER PROVIDERS. SEE ADR INFORMATION PACKET AND STIPULATION.

YOU MAY ALSO BE ORDERED TO PARTICIPATE IN ARBITRATION PURSUANT TO CCP 1141.10 AT THE CASE MANAGEMENT CONFERENCE. THE FEE FOR THESE SERVICES WILL BE PAID BY THE COURT IF ALL PARTIES HAVE APPEARED IN THE CASE AND THE COURT ORDERS THE CASE TO ARBITRATION PURSUANT TO CCP 1141.10. THE CASE MANAGEMENT CONFERENCE WILL BE CANCELLED IF YOU FILE FORM SDSC CIV-359 PRIOR TO THAT HEARING

SDSC CIV-721 (Rev. 11-00)                                                                                       Page: 1

**NOTICE OF CASE ASSIGNMENT**

SUM-100

## SUMMONS
### (CITACION JUDICIAL)

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
Plan Vista Solutions, Inc. dba MedAvant Health Care Solutions fka
National Preferred Provider Network and DOES 1-100

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
Three Rivers Provider Network, Inc.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

| | |
|---|---|
| The name and address of the court is: *(El nombre y dirección de la corte es):* <br> Superior Court of State of California, County of San Diego <br> 330 West Broadway <br> San Diego, CA. 92101 | CASE NUMBER: 37-2007-00081600-CU-FR-CTL <br> *(Número del Caso):* |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
William J. Hurley III
1620 5th Avenue, Suite 900, San Diego, CA 92101    (619) 564-8414

DATE:    NOV 1 3 2007    Clerk, by    S.L. FRANKLIN    , Deputy
*(Fecha)*    *(Secretario)*    *(Adjunto)*

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010).)*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of (specify):

3. ☑ on behalf of (specify): Plan Vista Solutions, Inc, dba MedAvant Health Care Solutions fka National Preferred Provider Network

   under: ☐ CCP 416.10 (corporation)    ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)    ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)    ☐ CCP 416.90 (authorized person)
   ☐ other (specify):
4. ☑ by personal delivery on (date):  11-15-07

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 (Rev. January 1, 2004)

SUMMONS

Code of Civil Procedure §§ 412.20, 465

UNITED STATES
DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
SAN DIEGO DIVISION

# 145498        — BH

December 13, 2007
14:17:31

Civ Fil Non-Pris
USAO #.: 07CV2333 CIVIL FILING
Judge..: WILLIAM Q HAYES
Amount.:                    $350.00 CK
Check#.: BC# 0863

Total—>  $350.00

FROM: CIVIL FILING
      THREE RIVERS V. PLAN VISTA

JS 44   (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a)  PLAINTIFFS
Three Rivers Provider Network, Inc.

**DEFENDANTS**
Plan Vista Solutions, Inc. dba Medavant Health Care Solutions fka National Preferred Provider network, and DOES 1-100

(b)  County of Residence of First Listed Plaintiff   San Diego
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   Gwinnett County
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c)  Attorney's (Firm Name, Address, and Telephone Number)
William J. Hurley III, Esq., 1620 5th Avenue, Suite 900, San Diego, California 92101, Tel: (619) 564-8414

Attorneys (If Known)
Zuber & Taillieu, LLP, 10866 Wilshire Boulevard, Suite 300, Los Angeles, CA 90024, Tel: (310)807-9700

## II. BASIS OF JURISDICTION  (Place an "X" in One Box Only)

☐ 1  U.S. Government Plaintiff
☒ 3  Federal Question (U.S. Government Not a Party)
☐ 2  U.S. Government Defendant
☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)   and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 195 Contract Product Liability | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | | | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | | | |

Under PERSONAL INJURY column:
☐ 362 Personal Injury - Med. Malpractice
☐ 365 Personal Injury - Product Liability
☐ 368 Asbestos Personal Injury Product Liability
**PERSONAL PROPERTY**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**PRISONER PETITIONS**
☐ 510 Motions to Vacate Sentence Habeas Corpus:
☐ 530 General
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

## V. ORIGIN  (Place an "X" in One Box Only)
☐ 1 Original Proceeding
☒ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
RICO, 18 U.S.C. 1962 (a), (b), and (c)
Brief description of cause:
Alleged racketeering enterprise to commit acts of fraud

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY
(See instructions)
JUDGE ___   DOCKET NUMBER ___

DATE  12/13/07
SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**
RECEIPT # 145498   AMOUNT $ 350   12/13/07 64   APPLYING IFP ___   JUDGE ___   MAG. JUDGE ___