1   William J. Hurley III, Esq. (SBN 188301)
    1620 5th Avenue, Suite 900
2   San Diego, California 92101
    Telephone: (619) 564-8414
3   Facsimile: (619) 795-9501

4

5   Attorney for Plaintiff
    Three Rivers Provider Network

6

7

8                   **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9                   **COUNTY OF SAN DIEGO - CENTRAL DISTRICT**

10

11  THREE RIVERS PROVIDER NETWORK,        Case No.  **37-2007-00081609-CU-FR-CTL**
    INC.,
12                                         **COMPLAINT FOR DAMAGES FOR:**
                    Plaintiffs,
13                                         **1)    False Advertising**
            v.                             **2)    Unfair Competition**
14                                         **3)    Breach of Contract**
    PLAN VISTA SOLUTIONS, INC. dba         **4)    Fraud**
15  MEDAVANT HEALTH CARE SOLUTIONS         **5)    Conversion**
    fka NATIONAL PREFERRED PROVIDER        **6)    RICO**
16  NETWORK, and DOES 1-100,

17                  Defendants.

18

19        Plaintiff Three River Provider Network, Inc. ("TRPN") on behalf of itself and all others

20  similarly situated alleges, based upon personal knowledge as to TRPN and the acts related to TRPN

21  stated herein, and as to all other matters, upon information and belief based upon, *inter alia*, the

22  investigations made by TRPN and TRPN's attorneys as follows:

23                          **NATURE OF THE ACTION**

24        As more fully set forth herein, Plaintiff TRPN is a Preferred Provider Organization ("PPO")

25  which consists of more than 1,400,000 provider locations nationally, which locations represent direct

26  contracts between TRPN and health care providers.  TRPN contracts provide discounts on group

27  health, workers compensation and automobile liability claims.  TRPN owns the Managed Care

28  Strategies ("MCS") and Buckeye Preferred Network and manages the provision of the discounts.  In

                                        1

1  early 2001, Defendant Plan Vista Solutions, Inc. dba MedAvant fka National Preferred Provider

2  Network ("NPPN") (hereinafter collectively "MedAvant") entered into a contract with TRPN

3  whereby MedAvant's clients, various insurers and/or third party administrators, were to gain access

4  to TRPN's network to attain reductions in health care costs through the TRPN network.

5      Following a repeated pattern of breach of that agreement by MedAvant, TRPN brought suit

6  against MedAvant to enforce the provisions of the underlying agreement.  The litigation resulted in a

7  new contract between the parties.  That contract was signed by Medavant and TRPN in June, 2006.

8      This action involves numerous breaches by MedAvant of the underlying agreement, resulting

9  in violations of California's unfair competition, false advertising and fraud laws.  The multiple

10  breaches rise to the level of violations of the federal Racketeer Influenced and Corrupt Organizations

11  Act ("RICO").  MedAvant has also violated both State of California and ERISA laws pertaining to

12  the illegal taking of discounts through "Silent PPO" arrangements.  MedAvant and its clients have

13  systematically attempted to deprive TRPN of the access fees for the discounts and have thereby

14  converted TRPN's asset, the discounts negotiated with the providers.

15  ## JURISDICTION AND VENUE

16      1.      This Court has jurisdiction over the action since the amount of controversy exceeds

17  the applicable jurisdictional requirement, exclusive of interest and costs, as to the named Plaintiff.

18  Plaintiff has been damaged in an amount equal to the illegal discounts taken for services rendered,

19  (the full amount of which has not yet been ascertained, but is in excess of $45 million), plus an

20  amount equal to the value of the service, material, product and network access taken by Defendants

21  without Plaintiff's knowledge.

22      2.      Venue is proper in this Court because the named Plaintiff is headquartered in and

23  operates the TRPN network out of their office located in the County of San Diego, State of

24  California.  Venue is also proper as the contract at issue provided that it would be governed by and

25  construed in accordance with the laws of the State of California, and multiple breaches of the

26  contract occurred here.

27  ///

28  ///

**PARTIES**

3.    Plaintiff TRPN is a corporation qualified to do business in California with its headquarters located at 1620 Fifth Avenue, Suite 900, San Diego, CA 92101. TRPN owns and operates the Managed Care Strategies ("MCS") network and provides discounts, through direct contracts between TRPN and health care providers, on group health and other liability claims. TRPN additionally has contracts with several of the largest health care carriers in the United States.

4.    Defendant MedAvant is a business organization, form unknown, with principal offices located at 1854 Shackleford Court, Suite 200, in Norcross, Georgia. On information and belief, MedAvant also has corporate offices in other states, including one at 1901 East Alton, Suite 100, Santa Ana, California. MedAvant also has corporate offices located at 419 East Main Street, Middletown, New York. Defendant contracted directly with Plaintiff to attain reductions in discounts through access to Plaintiff's network. MedAvant transacts substantial business in California, and especially here in San Diego, California, but also affects interstate commerce throughout the states of the nation.

5.    Plaintiff is informed and believes, and thereon alleges, that Defendants including MedAvant and its clients named herein as Does 1 through 100 were responsible in some manner for the matters alleged in this complaint, as well as for the damages caused thereby. The true names and capacities of these defendants named as Does 1 through 100 are presently unknown to Plaintiff. Plaintiff will amend this complaint when such names and/or capacities are ascertained.

6.    Plaintiff is informed and believes, and thereon alleges, that at all times material hereto, each Defendant, including those named fictitiously herein, in addition to acting for himself,. herself, or itself, and on his, her or its own behalf, is and was acting as the agent, servant, employee and representative of, and with the knowledge, consent and permission of each and all of the other defendants and within the course, scope and authority of such agency, service, employment and representation. Plaintiff is further informed and believes, and thereon alleges, that the acts of each defendant referred to in this complaint were fully ratified by all of the other defendants herein.

///

///

## FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

7.      On or about April 10, 2001, the parties entered into a written Network Agreement whereby TRPN leased access to Plaintiff's network of discounts on group health, workers compensation and automobile claims to MedAvant. After TRPN was forced to file litigation against MedAvant for breaches of that agreement in early 2006, the parties entered into another contract regarding network access, dated June 17, 2006. A true and correct copy of that contract is attached hereto as Exhibit 1. The terms of both agreements were essentially the same and will be detailed below.

8.      Pursuant to these contracts, in exchange for TRPN's agreement to provide MedAvant's clients access to TRPN's network, MedAvant agreed, *inter alia*, to pay TRPN a percentage of the fees received from its clients, as well as to send monthly reports regarding all services subject to the network discounts. Subsequent amendments to the contract have increased the fee percentage, but have left the majority of the underlying terms of the original contract unchanged.

9.      MedAvant also agreed to advise its clients of discounts arranged through the network and agreed to notify the network when a client had agreed to use the discounts. Originally, the contract called for a list of MedAvant's clients to be attached to the contract itself. This list was not attached until June of 2006.

10.      In Paragraph 4 of the contract, MedAvant agreed to use its "best efforts" to have its clients refer to TRPN specifically by name on the Explanation of Benefits ("EOB") form. This is important because TRPN's contracts with providers require that TRPN be identified on the EOB.

11.      Despite its agreement to do so, MedAvant did not use its best efforts to include Plaintiff TRPN's name on the EOB forms. This practice resulted in a large number of provider inquiries directly to TRPN, when the providers did not recognize the names that were used on the EOBs, since MedAvant had failed in its responsibility to place TRPN's name on the form.

12.      Rather than meeting their duties of disclosure under the contract, MedAvant began as early as 2001 to consistently and repeatedly omit TRPN's name on the EOB form, and this practice continues until the present day. For example, on January 24, 2006, TRPN received an inquiry from

a provider who could not properly identify the source of a discount based on Defendants' practice of

misidentification on the EOBs.  This particular provider wrote to TRPN and expressed their

confusion stating:

> "The following claim was sent to 'the Alliance' (I don't have any idea
> who they are).  They sent our claim to 'MedAvante/Plan Vista' (don't
> know who they are) for repricing.  They sent the claim to 'NPPN' for
> repricing.  NPPN took a TRPN discount . . . but only verbally because
> the EOB states NPPN travel."

This is only one of hundreds of such inquiries which TRPN has had to process as a result of

Medavant's breach of the contract.  It was by investigating these claims thoroughly that TRPN

became aware of the full implication of the absence of their name from the EOBs.

      13.    On February 6, 2006, TRPN was contacted by one of their providers due to

Defendants' practice of misidentification on the EOBs.  That particular provider wrote to TRPN and

stated:

> "I have contacted "NPPN" several times about claims that have been
> repriced by them but the network used not being identified on the
> explanation of benefits.  I have explained to them that we must have
> this info on the EOBs, they tell me that they are not required to do this.
> I have explained to them that in order for the discount to be done this
> must show on all EOBs.  This is needed to ensure that the discount is
> at our contract rate and that the patient will receive the correct contract
> discount.   Not all claims repriced by "NPPN" is (sic) this way, but the
> majority of them are".

In this way, MedAvant's custom and practice of breaching the contract and misidentifying the

source of the discounts on the EOBs directly interfered with TRPN's ability to do business with their

providers.  TRPN personnel had to spend their time and efforts responding to the providers'

confusion caused by MedAvant's multiple breaches of contract.

      14.    Through their investigation, TRPN has discovered that there are numerous instances

where Defendant MedAvant allowed its client to receive a discount of a provider's bill by utilizing

the TRPN/MCS network, without including that same discount in the utilization reports provided to

TRPN by MedAvant.  This is critical because it is only through those savings reports that TRPN can

accurately and comprehensively determine the total amount of discounts and, therefore, the fee to

1  which TRPN is entitled from Defendants. Plaintiff is informed and believes, and thereon alleges,

2  that Defendants intentionally omitted the data on the EOB forms and in the savings reports so that

3  TRPN would not discover Defendants' scheme to avail themselves and their clients of discounts

4  through the TRPN/MCS network without paying the contract fee for those discounts.

5      15.    During its investigation, TRPN also became aware that on prior occasions MedAvant

6  was demanding a discount despite the lack of proper network identification on the EOB. Plaintiff is

7  informed and believes, and thereon alleges, that these actions were part of Defendants' scheme to

8  obtain discounts to which they are not entitled. Plaintiff is also informed and believes and thereon

9  alleges that MedAvant failed to disclose to TRPN as well as MedAvant's own clients and brokers,

10  the rate at which it was providing access to TRPN's discounts so as to unjustifiably convert the

11  proceeds of that access to its own gain.

12      16.    During TRPN's investigation, it became clear to TRPN that many of MedAvant's

13  clients were accessing the TRPN/MCS network while MedAvant continued to fail to identify those

14  clients on the EOBs and the monthly savings reports, and thereby deprived TRPN of their rightful

15  fee for the access. On further investigation, TRPN discovered that MedAvant had been signing up

16  some clients on a "capitated system" rather than based on a percentage of savings, and MedAvant

17  was allowing those clients access to the TRPN/MCS network without disclosing their existence to

18  TRPN and without sharing any of the proceeds gained by way of the capitation system with TRPN

19  as required by the contract. Since the payments MedAvant received from these capitation

20  agreements were never reported to TRPN, TRPN could not know the payments existed. As of July

21  of 2007, MedAvant ceased to provide this essential savings report to TRPN at all and ceased

22  payment of any access fee in clear breach of the contract terms.

23      17.    Plaintiff is informed, believes and thereon alleges, that Defendant's failure to place

24  TRPN's name on the EOBs was part of a scheme to defraud Plaintiff out of the fees to which

25  Plaintiff was entitled under the contract and to deceive health care providers as to the Payors

26  responsible for the payment of invoices and to receive discounts from providers to which MedAvant

27  was not entitled and to create a course of conduct by which providers accept discounts directly from

28  NPPN not TRPN. Furthermore, Plaintiff is informed and believes and thereon alleges that

1    Defendants and its clients intentionally conspired to form a plan to receive discounts from healthcare

2    providers while taking hidden fees from corporate and public healthcare plans without disclosing

3    these fees or passing on the benefit of the same.  Plaintiff is informed, believes and thereon alleges

4    that Defendants knew that the statements in the savings reports and on the EOBs naming someone

5    other than TRPN were false when made, and that Defendants did so with the intent to mislead

6    Plaintiff and others.

7    **California's Prohibition of "Silent PPO" Activities**

8          18.    California has a wide body of statutory and decisional law indicating the public

9    policy in favor of preventing "Silent PPO" situations, such as the one presented here.  For example,

10   California statutory law provides that "contracting agents" that sell, lease or transfer such contracted

11   discounts can no longer transfer just the discount, rather, "the rights and obligations of the provider

12   shall be governed by the underlying contract between the health care provider and contracting

13   agent".  California Business & Professions Code, §511.3; California Health & Safety Code §1375.7;

14   California Insurance Code §10178.4; California Labor Code §4610.  Additionally, California law

15   provides that payors claiming a discount must provide an explanation of benefits (EOB) that

16   identifies the name of the plan or network that has a written agreement signed by the physician

17   whereby the payor is entitled to pay a preferred rate.  The California Medical Association's legal

18   counsel has opined that California law has provided a mechanism that ensures that the pernicious

19   effects of "Silent PPOs" are minimized.  The CMA legal counsel has stated in legal opinions that

20   they believe that "Silent PPO" practices amount to theft and that restitutionary disgorgement of

21   profits should be a remedy available to the victims of "Silent PPO" activities under California's

22   unfair competition law.

23         19.    The strong public policy against "Silent PPO" activities in California law is necessary

24   to prevent the kind of illegal activities which have taken place here as a result of MedAvant's

25   actions.  MedAvant is essentially keeping TRPN providers and MedAvant's clients from discovering

26   each others' identities and from knowing through which underlying contract the provider's services

27   are being compensated.  This is the very situation that California's "Silent PPO" laws are designed

28   to avoid.

20.     In these ways, MedAvant has attempted to unlawfully convert TRPN's network of discounts. MedAvant is charging its clients a much higher fee for access in most instances than MedAvant itself is obligated to pay to TRPN under the contract. In this way, MedAvant's failure to disclose these facts to the clients interferes with TRPN's business by misrepresenting the rate at which those clients could have access to the discounts if they contracted directly with TRPN. Plaintiff is informed and believes and thereon alleges that MedAvant uses these "hidden fees" to line its own pockets at the expense of its clients, their members and TRPN.

**FIRST CAUSE OF ACTION**
**(False and Misleading Advertisement in Violation of**
**California Business & Professions Code §§17200 <u>et seq</u>.)**
**(Unfair Business Practices Statutes)**
**(Against all Defendants)**

21.     Plaintiff incorporates by reference all preceding paragraphs as fully set forth herein and further alleges as follows:

22.     Section 17200 <u>et seq</u>. of the California Business & Professions Code prohibits acts of unfair competition, which includes any "unfair, deceptive, untrue or misleading advertising."

23.     Defendants' false statements on the EOB forms regarding the entity providing the discounts are likely to and have deceived members of the public. The misleading statements on the EOBs falsely identify the source of the discount, making it impossible for readers of the EOBs to determine that the discounts were garnered through TRPN. As a result of Defendants' false advertising, Plaintiff TRPN has suffered damages. As a result of the conduct described above, Defendants have been and will be unjustly enriched at the expense of Plaintiff and the general public. Specifically, Defendants have been unjustly enriched by the receipt of millions of dollars in wrongfully identified discounts which were supported by EOBs which affirmatively misrepresented the source of those discounts. At the time those statements were made on the EOBs, Defendants knew, or in the exercise of reasonable care, should have known, those statements to be false.

/ / /

/ / /

/ / /

/ / /

8

COMPLAINT

**SECOND CAUSE OF ACTION**
**(Unfair Competition – Business and Professions Code §17200 et seq.)**
**(Against all Defendants)**

24.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth here and further alleges as follows:

25.     Defendants are in violation of California statutory law regarding "Silent PPO" activities, including, but not limited to, Business and Professions Code §511.3; California Health and Safety Code §1375.7; California Insurance Code §10178.4; and Labor Code §4610. Defendants' actions violate the public policy encompassed in the California "Silent PPO" law, in that Defendants violated the terms of the underlying contract by, among other things, failing to disclose TRPN as the source of the discounts on the EOB forms.

26.     The Unfair Competition Act ("UCA"), California Business & Professions Code §17200 et seq. prohibits any "unlawful, unfair or fraudulent business practices." §17203 provides that any "person who engages, has engaged or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction." Defendants' actions as outlined herein are unlawful business practices and therefore violate Business & Professions Code 17200 et seq.

27.     TRPN has been damaged as a result of Defendants' actions.

**THIRD CAUSE OF ACTION**
**(Breach of Contract)**
**(Against all Defendants)**

28.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth here and further alleges as follows:

29.     The written contract between TRPN and MedAvant provides responsibilities and duties for each party, and is attached as Exhibit 1.

30.     MedAvant breached that agreement by among other things:

- Failing to advise its clients of discounts arranged through TRPN and failure to notify TRPN when a client had agreed to use those rates;

- Failing to attach a list of clients to the original contract;

9

COMPLAINT

- Failing to periodically notify TRPN of additions and/or deletions to the client list;
- Failing to use any efforts whatsoever to refer to TRPN directly on the EOBs;
- Failing to pay TRPN the correctly accounted for percentage of the fees Defendants received from its clients as a result of the access to TRPN's network; and
- Failing to provide TRPN with monthly savings reports beginning in July of 2007.

31.    Plaintiff has faithfully performed all obligations, conditions, covenants and promises on its part to be performed under the agreement, except for those conditions, covenants and promises that have been prevented or excused by Defendants' conduct.

32.    As a proximate result of the Defendants' breaches of contract, Plaintiff has suffered, and will continue to suffer damages in an amount to be proven at trial and in excess of this Court's jurisdictional minimum.

### FOURTH CAUSE OF ACTION
### (Fraud)
### (Against all Defendants)

33.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth here and further alleges as follows:

34.    When Defendants made and/or caused to be made the misrepresentations set forth herein on the EOBs and savings reports, and/or caused said misrepresentations to be made, they knew of the falsity of the representations and made the representations with the intent to induce TRPN and others to rely on the false statements.

35.    Throughout the time alleged herein, TRPN was ignorant of the falsity of the representations made by Defendants and relied on these representations with respect to continuing to work with Defendants and in calculating the fees owed them under the network agreement.  Had TRPN known the true facts, Plaintiff would have investigated the accountings more completely and earlier and avoided the losses and damages incurred as alleged herein.

COMPLAINT

36.    As a result of the intentional misrepresentations described herein, TRPN has been damaged by providing NPPN clients with more than over $45 million worth of discounts, the exact amount to be proven at trial.

## FIFTH CAUSE OF ACTION
### (Conversion)
### (Against All Defendants)

37.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth here and further alleges as follows:

38.    TRPN possessed an ownership interest in the discounts negotiated directly with its providers. TRPN's discount network, its assets and all economic benefits and advantages inured to TRPN's benefit. TRPN further had a legal, equitable, and contractual entitlement to the negotiated discounts with the providers.

39.    Defendants, and each of them, wrongfully converted TRPN's assets, property, property rights and the proceeds thereon, and have misappropriated and usurped for their own economic benefit said assets, property, proceeds and property rights belonging to TRPN.

40.    At all times herein mentioned, Defendants and each of them acted in furtherance of a scheme to intentionally misappropriate TRPN's property in the form of negotiated discounts. Plaintiff is informed and believes, and thereon alleges that Defendants have converted those discounts to their own benefit and intend to permanently deprive TRPN of those assets.

41.    As a result of Defendants' acts, TRPN has been deprived of the negotiated discounts in an amount believed to be in excess of $45 million. The exact amount to be proven at the time of trial.

## SIXTH CAUSE OF ACTION
### (Racketeering Influence and Corrupt Organizations)
### (Against all Defendants)

42.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth here and further alleges as follows:

11
COMPLAINT

43.    This venue is proper for prosecution of this action, pursuant to 18 U.S.C. §1965(d), as Defendants at all relevant times transacted business in the County of San Diego and Defendants at this time are presently transacting business within the County of San Diego.

44.    As more particularly alleged below, Defendants herein, through a pattern of racketeering activity, directly or indirectly, engaged in, maintained and controlled an enterprise which substantially affects interstate commerce and which damaged TRPN and TRPN's business and/or property.  MedAvant's enterprise substantially affects interstate commerce inasmuch as it operates services, including health care transaction processing, throughout the United States and boasts on its website on the internet that it "operates the oldest and most established network of pharmacies for E-Prescribe Solutions and runs one of the largest independent Preferred Provider Organization – the National Preferred Provided Network (NPPN)."  MedAvant also routinely utilizes the United States mails and wires as well as the internet, on an interstate basis and generally has a very substantial impact upon interstate commerce.

45.    Defendants, and each of them, formulated, initiated, implemented, offered to, and are presently engaged in perpetuating a scheme to deprive plaintiffs of money and property by means of false and fraudulent pretenses, representations and promises.  More particularly, Defendants, beginning in 2001 and continuing consistently until the present, agreed and undertook to wrongfully deprive TRPN of the benefits of the TRPN network, and to appropriate, cease and convert the tools and assets of the TRPN networks unto themselves, in order to misappropriate and retain the economic benefit and profits from leasing access to that network to others, until the same were converted into cash or cash equivalents.

46.    Defendants have engaged in a pattern of racketeering activity by engaging in the following indictable offenses, all with the specific intent to deceive or defraud Plaintiffs by furthering the goals of Defendants' fraudulent scheme through false or fraudulent pretenses:

       a)    On or about July 23, 2006, by utilizing the United States mail and/or United States wires in forwarding correspondence from Defendant MedAvant to TRPN in furtherance of Defendants' scheme, with the specific intent to deceive and defraud TRPN with respect to the omission of discounts taken from that document;

b)      On or about July 30, 2007, by utilizing the United States mail and/or United States wires in forwarding correspondence from Defendant MedAvant to TRPN in furtherance of Defendants' scheme, with the specific intent to deceive and defraud TRPN regarding the omission of discounts taken from the document;

c)      Plaintiff is informed and believes and thereon alleges that Defendants, up to the present, have engaged in other indictable offenses constituting predicate acts under 18 U.S.C. §§1961 et seq. and unequivocally demonstrating that Defendants, as a general practice, conduct their business through racketeering activity, thereby demonstrating a pattern.

47.     In acting as alleged herein above, Defendants have violated 18 U.S.C. §1962(a) inasmuch as they have used and invested proceeds derived from their NPPN activities to acquire, or attempt to acquire, and to operate Defendants' racketeering enterprise.

48.     Defendants have violated 18 U.S.C. §1962(b) by wrongfully acquiring, or purporting to acquire Plaintiff's interest in the right to the profit derived from the TRPN network through the pattern of racketeering activity detailed above.

49.     By engaging in the pattern of racketeering alleged hereinabove, Defendants have violated 18 U.S.C. §1962(c) by conducting and participating, directly and indirectly, in the conduct and maintenance of the racketeering enterprise.

50.     The Defendants and each of them agreed and conspired with each other defendant and others, to perpetrate the aforementioned violations of 18 U.S.C. §§1962(a)(b) and (c) and, in engaging in a pattern of racketeering activity referred to hereinabove, acted in furtherance of the agreed upon plan to commit the alleged predicate acts to advance and further their scheme.

51.     Plaintiff TRPN has been damaged in its business and property by being fraudulently deprived of the proceeds of the TRPN network and their contractual right to receipt of substantial money in the form of percentage of discounts offered by Defendants.  Defendants racketeering activity enabled them to deceive Plaintiff and thereby gain control of the assets of the discounts provided over the TRPN network, all documenting a substantial nexus between Defendants' racketeering activity, their RICO enterprise and Plaintiff's economic damages.

52. Defendants' racketeering activities in violation of 18 U.S.C. §1962 were a legal cause of Plaintiff's economic injury in a sum in excess of this Court's jurisdictional minimum and which is believed by Plaintiff to be in excess of $45 million.

53. Pursuant to 18 U.S.C. §1964, Plaintiff is entitled to three times their actual economic damages. Plaintiff is informed and believes, and thereon alleges, that Defendants' racketeering activity is ongoing and, hence, is not closed. Specifically, Defendants' RICO enterprise is even at the present time engaged in attempting to market, lease, alienate, convey, and otherwise utilize for Defendants' sole economic benefit, the assets of TRPN and of the enterprise for Defendants' own gain and continue to collect profits and other financial benefit from the Defendants' activities to TRPN's detriment.

54. Plaintiff is informed and believes, and thereon alleges, that Defendants' ongoing conduct clearly presents a continued threat of repeated racketeering activity at present and in the future as documented by Defendants' pattern of conduct.

WHEREFORE, Plaintiff prays for relief against Defendants as follows:

1. For compensatory damages according to proof and in excess of $45 million;

2. For treble damages under 18 U.S.C. §1964;

3. For prejudgment interest according to proof;

4. For costs of suit, including expert fees and costs incurred herein;

5. For reasonable attorneys' fees; and

6. For such other and further relief as the Court may deem just and proper.

Dated:    November 13, 2007

By: _____
William J. Hurley III
Attorney for Plaintiff Three Rivers Provider
Network

**EXHIBIT 1**

Network Access Agreement
Between
Three Rivers Provider Network
and
MedAvant

This Agreement ("Agreement") is made and entered into on June 27th, 2006, by and between Three Rivers Provider Network (""TRPN""), a Nevada Corporation and PlanVista Solutions, Inc. d/b/a MedAvant Healthcare Solutions f/k/a National Provider Network, hereinafter referred to as "MedAvant" with offices at 1854 Shackleford Court, Suite 200, Norcross, GA 30093.

WHEREAS, TRPN, on behalf of its respective clients and payors, has created and maintains a network of health care providers ("Participating Provider Network") by entering into contracts with hospitals, ancillary health care facilities, and individual health care practitioners (collectively referred to as "Participating Providers"). Participating Providers deliver services ("Provider Services") at a reduced rate for TRPN's clients and payors.

WHEREAS, TRPN owns the MCS and Buckeye Preferred Networks and continues to actively contract with hospitals, ancillary health care facilities and individual health care practitioners for inclusion in the Participating Provider Network(s) ("TRPN Affiliated Networks.")

WHEREAS, MedAvant, contracts with Clients and Payors with respect to rendering of Provider Services for the benefit of such Payors that have a contract with MedAvant or a MedAvant Client. "Client" means any entity having an active written agreement with MedAvant for MedAvant to make Provider Services available to its Beneficiaries as defined below, or to its Payors and their Beneficiaries. "Payor" means any self-insured employer, provider organization, health maintenance organization, insurance company, or any other entity responsible under health care plan benefits, auto liability claims, or worker's compensation benefits ("Benefit Plans") to pay for health care services for participants, dependents, or retirees ("Beneficiaries") and has an active Payor Agreement with MedAvant. "Payor Agreement" means a direct agreement between MedAvant and Payor that provides Beneficiaries access to the Participating Provider Network on behalf of MedAvant's Clients and Payors.

WHEREAS, MedAvant wishes to arrange for access of the TRPN Participating Provider Network and TRPN Affiliated Networks for MedAvant Clients, Payors and Beneficiaries.

WHEREAS, TRPN wishes to grant MedAvant access to the TRPN Participating Provider Network and TRPN Affiliated Networks.

NOW THEREFORE in consideration of the mutual promises contained in this Agreement, the Parties agree as follows:

1

**Exhibit 1, pg.1**

1. This Agreement shall be effective from June 27 2006, through the 31st day of June, 2007, and shall be automatically renewed for successive one (1) year periods.

   TRPN agrees that its contracts with Participating Providers and TRPN Affiliated Networks entitle MedAvant and MedAvant Clients to access discounts from such Participating Providers and requires them to abide by the terms of this Agreement and accept assignment of benefits from Beneficiaries of Payor, and to submit claims for covered medical services directly to Payors or the Payor's authorized administrator. TRPN agrees that TRPN contracts with Participating Providers and TRPN Affiliated Networks instruct the Participating Providers to collect the required co-payments, coinsurance, deductibles and/or payments for non-covered services directly from the Beneficiary and to not bill the Beneficiary for charges reduced through the Participating Provider's Agreement with the Parties.

2. MedAvant shall utilize the TRPN Participating Provider Network as a constituent network within the context of all networks and providers offered to MedAvant Clients and Payors and prospective clients and payors as a supplemental network for claims which have not been repriced within the primary network. MedAvant shall utilize the TRPN Participating Provider Network in such a way as to avoid cherry picking particular discounts afforded by the TRPN Participating Provider Network, and will exercise best efforts to avoid using the TRPN Participating Provider Network in such a way as will violate silent PPO laws.. MedAvant will access TRPN and TRPN Affiliated Networks for secondary network access solely through this access agreement and shall not seek to negotiate discounts with TRPN Providers on a claim by claim basis for any MedAvant Client covered under this Agreement. With respect to any particular disputed claim, in the event that TRPN does not provide claim support in accordance with industry standards, it shall not be a breach of this Agreement for MedAvant to take action, including negotiation with TRPN Providers in order to resolve such Claim only after TRPN has been provided all claim information so that TRPN can contact and attempt resolution with the provider. From time to time, MedAvant will ask TRPN to complete a claims savings/provider disruption analysis; TRPN agrees to use best efforts to complete such analyses within five (5) business days of the request from MedAvant.

3. (a) TRPN shall make reasonable efforts to ensure that Participating Providers render Provider Services to all Beneficiaries in accordance with community standards, consistent with Participating Provider's training and expertise, and with the manner in which services are provided by Participating Provider to other patients, without discrimination based on sex, race, color, religion, marital status, sexual orientation, age, ancestry or national origin.

2

Exhibit 1, pg.2

(b) By the twentieth (20th) calendar day of each month following collection by MedAvant, MedAvant shall submit a detailed listing "Savings Report" of all claims subject to contractual adjustments from the use of this lease agreement with the TRPN and TRPN Affiliated Network Participating Provider contracts within the prior month. The Savings Report shall include, at a minimum, a listing of each claim re-priced, the gross billed charges and the re-priced amount.

(c) MedAvant shall submit payment hereinafter referred to as "Access Fees" to TRPN on or about the 20th day of the month following receipt of payment from its Clients or Payors of said claims. During those months in which the net "Access Fee" equals or exceeds Twenty-Seven Thousand Five Hundred Dollars ($27,500) TRPN's Access Fees shall be Thirty percent (30%) of the revenue collected from MedAvant Clients utilizing TRPN and TRPN Affiliated Networks. During those months in which the net "Access Fee falls below $27,500 TRPN's Access Fees shall be thirty-five percent (35%) of the revenue collected from MedAvant Clients utilizing TRPN and TRPN Affiliated Networks. MedAvant agrees not to provide MedAvant Clients with access to TRPN and TRPN Affiliated Networks at a rate less than 10% without the prior written consent of TRPN. TRPN represents and warrants that the Access Fees charged to MedAvant hereunder shall be at least as favorable or more favorable to MedAvant than Access Fee rates charged by TRPN to other similarly situated entities. MedAvant agrees that TRPN's access fees shall not fall below Fifteen Thousand Dollars ($15,000). Both parties agree to keep the terms of this agreement confidential.

(d) In the event that MedAvant files bankruptcy, gives notice of its insolvency, or is in arrears in the payment of access fees to TRPN for more than 45 days (following notice and demand of payment by TRPN), this Agreement shall become immediately null and void.

4. TRPN acknowledges that MedAvant's Clients/ Payors and/or Beneficiaries shall be responsible for the final payment of claims, subject to the obligations of the Beneficiary as designated in the Payor's Benefit Plan. MedAvant shall make best efforts to ensure that the Payor shall make all payments directly to the applicable Participating Provider. Neither TRPN nor MedAvant shall be responsible for any payment of claims or any lost savings. MedAvant shall make best efforts to ensure a notice indicating TRPN/Affiliate Network adjustment or similar words to that effect appear on the Explanation of Benefits. Furthermore, MedAvant acknowledges that TRPN Providers require the "TRPN" name to appear on the Explanation of Benefits in order for a discount to be accepted. Prior to denying any particular discount based upon an EOB that lists MedAvant (or "NPNN"), but not TRPN, however, TRPN shall notify MedAvant and make a good faith attempt to resolve the issues relating to that discount in a mutually agreeable fashion. MedAvant shall make reasonable efforts to ensure that the Payor shall pay the Participating Provider claims within thirty (30) business days of

3

Exhibit 1, pg.3

receipt of clean claims from the Participating Provider.  The parties agree that the inclusion by MedAvant of language in its contracts with Payors and Clients that such Payors and Clients must pay the Participating Providers within such period satisfies this covenant.

5.  MedAvant recognizes that the TRPN database of Participating Providers, including all Participating Providers' contract terms and affiliations,are proprietary information and, to the extent obtained by MedAvant pursuant to the activities specified in this Agreement,shall be treated as such by MedAvant.  TRPN recognizes that MedAvant's list of Clients and Payors including such entities identity, contract terms and contact information are proprietary information and to the extent obtained by TRPN pursuant to the activities specified in this Agreement, shall be treated as such by TRPN.  Notwithstanding the above two sentences, it shall not be a breach of Section 5 of this Agreement for either party to disclose to any other person, or to use for any purpose any information that is generally known to the public other than as a result of a breach of this Agreement.  MedAvant shall not access TRPN outside this agreement.  MedAvant is permitted to and shall use Participating Provider names, addresses, telephone numbers and specialty/services in its directories in printed or electronic form.  By the tenth (10th) business day of each month, TRPN will send MedAvant a new roster of Participating Providers, in a format mutually agreed to by the parties, including any additions, deletions or changes to Participating Providers.  TRPN agrees not to contact known clients of MedAvant.  Known clients is defined as the entities listed on Exhibit B.  It shall not be a violation of this provision for TRPN to contact a Client of MedAvant if TRPN is responding to a request or complaint of a TRPN provider or on behalf of another vendor, provided such contact is limited to such other vendor's business or gathering information on such TRPN provider inquiries.  TRPN agrees to route such client contact through MedAvant wherever possible.  It is understood that neither party has any intent to break any law relating to "Silent PPO" issues.  In the event either party hereto believes that the conduct of the other is creating a silent PPO issue, that party shall, by way of written notice, bring the issue to the attention of the other party so that the parties may reach an amicable solution.  Such written notice shall include specific instances of the specific behavior that is believed to be violating a specifically indicated "Silent PPO" law.  The parties shall then work together to eliminate such issue, either by determining that there is in fact no violation of the "Silent PPO" laws, or by correcting the behavior that might be violating the "Silent PPO" law(s).  Neither party shall bring any "Silent PPO" issues to the attention of any third-party unless thirty (30) days following the date of such initial notice, the party giving notice does not in good faith believe that the specific instances have been resolved.

6.  (a)  TRPN shall have the right to terminate Client/Payor access to any given TRPN or TRPN Affiliated Network Participating Provider.  Both parties agree that the termination of a Participating Provider, by either parties or by the Participating Provider, shall not be considered a

4

breach of the Agreement and shall not affect this Agreement in any way. Participating Provider rates shall be effective as defined in the contracts between the Participating Provider and the networks, and any change in such rates shall not be considered a breach of this Agreement and shall not affect this Agreement in any way. Notwithstanding anything else in this Section 6(a), TRPN may terminate Client/Payor access to any given TRPN or TRPN Affiliated Network Participating Provider only one (1) Client/Payor and one provider at a time, and only as a result of a problem relating to that Client's/Payor's access to that provider; TRPN may not terminate blocks of Clients/Payors or terminate Clients/Payors unrelated to issues with specific providers.

(b) Participating Provider rates shall be effective as defined in the contracts between the Participating Provider and the networks, and any change in such rates shall not be considered a breach of this Agreement and shall not affect this Agreement in any way.

7.   None of the provisions of this Agreement are intended to create, nor shall be deemed or construed to create, any relationship between the Parties other than that of independent entities contracting with each other solely for the purpose of effecting the provisions of this Agreement. The Parties to this Agreement, and their respective officers, directors or employees shall not be construed to be joint ventures, or the agent, employee or representative of the other. The Parties acknowledge and accept that neither Party is an insurer, indemnifier or provider of health care benefits. They further acknowledge and accept that neither Party has responsibility or liability for the payment of claims to Participating Providers or for the goods and/or services delivered by Participating Providers to the Beneficiaries of the Payors. Each party shall be responsible for its own acts and omissions and shall hold the other harmless therefore.

8.   (a) MedAvant acknowledges that TRPN offers its services on a national basis, including to businesses, which may be competitive with MedAvant. MedAvant agrees that subject to Paragraph 5 of this Agreement, TRPN may provide their services to any other entity.

(b) During the term of this Agreement and for a period of one year after termination of this agreement TRPN shall not directly contract any MedAvant Client that is listed on Exhibit B and has an active contract directly with MedAvant.

9.   The Parties acknowledge that in fulfilling the responsibilities set forth in this Agreement, they will have exchanged confidential and proprietary information concerning their business and financial affairs, as well as that of their subsidiaries and other affiliated companies, including and not limited to the rate or payment of the network access fees. The Parties agree not to disclose any such information at any time, except as is necessary, to their employees or agents or as required by law. The Parties further agree that they will take those actions reasonably

5

necessary to ensure that none of their employees or agents discloses such information to any third party or parties. The Parties agree that this obligation shall survive the termination of this Agreement. It shall not be a breach Section 9 of this Agreement for either party to disclose to any other person, or to use for any purpose any information that is generally known to the public other than as a result of a breach of this Agreement.

10. Upon termination of this Agreement, the Parties agree to promptly return or destroy any and all written or magnetic material containing or reflecting any confidential or proprietary business or financial information belonging to the other Party and not retain any copies, extracts or other reproductions in whole or in part of such material.

11. Either Party may terminate this Agreement with sixty (60) days prior written notice as a result of any breach of any provision of this Agreement. The Party receiving such notice shall have thirty (30) days from the receipt thereof to remedy the breach in order to comply with the terms and conditions of this Agreement. After this Agreement has been in place for one year, either Party may terminate this agreement without cause with ninety (90) days prior written notice.

12. The termination of this Agreement for any reason shall cause an automatic termination of the Parties' rights and obligations hereunder.

13. Each of the parties shall have quarterly audit rights with respect to financial records, source documents and other records that may form the basis of payments under this Agreement. A party, or its authorized representative may conduct an audit on no less than thirty (30) days written notice. Audits shall be conducted during normal business hours at the place at which the records being audited are kept, and shall be of such nature and duration as is reasonable given the circumstances so as to cause as little disruption as possible to the party being audited. Audits shall be limited to records no more than 1 year old, and records older than that shall be deemed accepted. The party conducting the audit shall bear all expense of the audit.

14. Each of the Parties agree to indemnify the other Party for any and all liability, loss, damage, claim or expense of any kind, including costs and attorney's fees which result from negligent or willful acts or omissions by the other Party, its agents or employees, regarding its duties and obligations under this Agreement.

15. All terms and conditions agreed upon by the Parties are contained in this Agreement. All prior negotiations, promises, agreements and representations, either spoken or written concerning the subject matter of this Agreement that are not set forth herein are null and void and have no bearing on the terms of this Agreement. Notwithstanding the above, the parties do not by entering into this Agreement waive or release any claim they may have based upon any prior Agreement or otherwise, all of which are expressly preserved.

6

16. Any modifications, amendments, deletions or addendums to this Agreement shall be mutually agreed to in writing by the Parties.

17. Waiver of any particular provision of this Agreement by either party shall not be considered a waiver of any subsequent occasion or of any other provision of this Agreement. Additionally, failure to exercise any right in regard to this Agreement will not serve as a waiver of such right.

18. Neither party may assign this Agreement without the prior written approval of the other Party. In the event of a change of ownership this contract and all terms herein shall immediately become null and void.

19. Provisions of this Agreement are totally independent of and separable from each other. If any provision of this Agreement is held to be invalid, illegal or unenforceable under present or future laws, such provision shall be fully severable. This Agreement shall be construed and enforced as if such invalid, illegal, or unenforceable provision had never comprised a part hereof, and the remaining provisions shall remain in full force and effect despite such severance, provided that the invalid provision is not material to the purpose and operation of this Agreement.

20. Notwithstanding that benefits may inure to Beneficiaries under this Agreement, it is not the intention of either Party that such Beneficiary shall be a third party beneficiary of the obligations assumed by either Party to this Agreement and no such Beneficiary shall have a right to enforce any such obligation.

21. TRPN has obtained and holds all registrations, permits, licenses, and other approval and consents, and has made all filings that are required to obtain from or make with all governmental entities under applicable law in order to conduct its business and to enter into and perform its obligations under this Agreement. Both parties shall promptly notify the other party of any changes in its ownership or business address and of any event that may materially impair either party's ability to carry out its duties and obligations under this Agreement. TRPN has the right to delegate the credentialing policies and standards as listed in Exhibit A.

22. This Agreement shall be governed by, construed and enforced in accordance with the laws of the State of California.

23. To the extent protected by law, the Parties shall, at all times, maintain the confidentiality of all medical records and other information provided to the Parties regarding Beneficiaries.

24. All notices provided pursuant to this Agreement shall be in writing and shall be sent by United States Postal Service, Certified Mail, Return Receipt Requested, postage prepaid to the address and designee set forth below. Any notice shall be effective on the earlier of the date

7

Exhibit 1, pg.7

receipt is acknowledged on the Return Receipt, or four (4) days after the date of the postmark by the United States Postal Service.

TRPN
1620 Fifth Avenue
Suite 900
San Diego, CA 92101
Attn:  General Counsel

MedAvant, Inc.
1854 Shackleford Court
Suite 200
, Norcross, GA 30093
Attn: Ford Pearson

With a copy to:
Zuber & Taillieu LLP
9595 Wilshire Blvd.
9th Floor
Beverly Hills, CA 90212
Attn: Josh Lawler

25.   TRPN and MedAvant shall work together to resolve any and all disputes between them, (hereinafter referred to as "Disputes") including but not limited to all questions of arbitration, the existence, validity, scope or termination of the Agreement or any term thereof. Any and all disputes arising between the parties pertaining to or arising out of this Agreement shall be resolved in the following order of preference:

   (a)   by good faith negotiation between representatives of the parties who have the authority to fully and finally resolve the Dispute;

   (b)   if the parties agree, by binding arbitration at a location acceptable to both parties using a neutral arbitrator having experience with the cost shared equally; and

   (c)   as a last resort only, by litigation.

   The parties must enter a cooling off period of Sixty (60) days after the notification of the Dispute in order for a party to commence litigation unless there has been or will be irreparable monetary or reputational harm.

26.   This Agreement becomes a binding contract only after it has been signed by both TRPN and MedAvant.  This Agreement may be executed in any number of counterparts, and each such counterpart shall be deemed to be an original instrument, but all such counterparts together shall constitute but one agreement.  Delivery of an executed counterpart by facsimile shall be equally as effective as delivery of a manually executed counterpart.

27.   The parties acknowledge and agree that this Agreement has been mutually discussed and negotiated, and that this Agreement has been jointly drafted by the Parties hereto.

8

Exhibit 1, pg.8

IN WITNESS WHEREOF, MedAvant and TRPN, acting by its authorized representatives, have signed below.

Three Rivers Provider Network

By: _Blaine D. Pollock_

Blaine D. Pollock
President

Date: 6/27/06

MedAvant

By: _Doug O'Dowd_

Doug O'Dowd
CFO

Date: 6/27/06

9

06/27/2006 TUE 13:32 [TX/RX NO 9235] ☑010

Exhibit 1, pg.9